UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E D

JUL – 8 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:19-MJ-308 |
| | ) | |
| LAWRENCE PAUL CHAMBERS, | ) | |
| | ) | **UNDER SEAL** |
| JONI MARIA METCALF, | ) | |
| | ) | |
| MANUEL CHRISTOPHER THOMAS, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Tyler C. Mensing, being first duly sworn, hereby depose and state as follows:

1.     I have been a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms

and Explosives ("ATF") since October 2014.  I am currently assigned to the ATF Washington

Field Division's Group II.   My assignments include conducting criminal investigations of

individuals and entities for possible violations of federal laws, particularly those laws found in

Title 18 and Title 21 of the United States Code.  Since working for ATF, I have graduated from

the Criminal Investigator Training Program and ATF Special Agent Basic Training in Glynco,

Georgia.  Prior to joining ATF, I was a Deputy United States Marshal with the United States

Marshals Service for approximately four (4) years.  Prior to that, I was a police officer with the

Metropolitan Police Department of Washington, D.C. ("MPD") for approximately one and a half

(1.5) years.

2.     As an ATF agent, I have participated in investigations, which resulted in the arrests, searches, and seizures of individuals and property.  I have participated in the use of cooperating informants, undercover agents, pen register/trap and trace devices, video surveillance, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques.  Additionally, I have participated in numerous controlled buys of firearms and narcotics from targets of law enforcement investigations.  I have also been involved in proactive and reactive cases.  Based on my training and experience, I am familiar with the methods used in furtherance of a variety of criminal activities.

3.     I submit this affidavit in support of a criminal complaint and arrest warrants charging Lawrence Paul CHAMBERS ("CHAMBERS"), Joni Maria METCALF ("METCALF"), and Manuel Christopher THOMAS ("THOMAS") with making false statements with respect to the purchase of a firearm, in violation of Title 18, United States Code, Sections 924(a)(1)(A) and 2, among other crimes.

4.     The facts and information contained in this affidavit are based upon my training and experience, personal knowledge, and observations during the course of this investigation, as well as information and evidence obtained from other agents involved in this investigation.  All observations I did not personally make were related to me by the individuals who made them, or come from my review of records, documents, and other physical evidence obtained during the course of this investigation.  This affidavit contains information necessary to support probable cause, and it is not intended to include each and every fact and matter observed by me or known to the government.

## PROBABLE CAUSE

### a.   Firearms Purchases and Attempted Purchases

5.      Through my training and experience, I am aware that federal law prohibits federal firearms licensees ("FFLs") from selling a firearm to a non-licensee purchaser "unless the [FFL] records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). I am further aware that the law requires FFLs to retain "as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." 27 C.F.R. § 478.124(a). Accordingly, any false statement a purchaser makes on a Form 4473 pertains to information an FFL is required by law to maintain.

6.      Based on a review of METCALF'S firearms transaction records, law enforcement has determined that, between July 30, 2018 and September 12, 2018, METCALF purchased five (5) firearms on five (5) separate occasions from various FFLs, within the Eastern District of Virginia.

7.      For each of the firearms METCALF purchased from FFLs, she was required by law to truthfully fill out ATF Form 4473. On each occasion, METCALF responded "yes" to a question on ATF Form 4473 that she was the actual buyer of the firearm listed for purchase. On Section 14 of each ATF Form 4473, METCALF certified by signature that her answers on the form were "true, correct, and complete," and that she understood that "making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to [the] transaction, is a crime punishable as a felony under Federal law."

8.      On or about August 10, 2018, METCALF attempted to purchase a firearm from the FFL Sharpshooters, located in Lorton, Virginia, within the Eastern District of Virginia. Sharpshooters staff informed ATF that METCALF's purchase was denied because her behavior

was suspicious and she was talking to an individual in the parking lot that arrived in a different vehicle from METCALF. ATF obtained security surveillance footage of METCALF's attempted purchase at Sharpshooters. Your affiant reviewed the footage, which showed that a white Chevrolet SUV arrived in the Sharpshooters parking lot and remained parked for several minutes while no one exited the vehicle. Approximately twenty (20) minutes later, a white BMW sedan arrived, and a black male dressed in a FedEx uniform exited the BMW and entered the front passenger seat of the white Chevrolet SUV. METCALF then exited the white Chevrolet SUV and stood next to the open front passenger side door of the white Chevrolet SUV talking with the occupant. METCALF then entered Sharpshooters, spent approximately three minutes in the store, and returned to her vehicle. Upon returning to her vehicle, METCALF continued to communicate with the same individual occupying the front passenger seat through the open driver-side door. Less than a minute after METCALF exited the store, she left her vehicle and returned into the store. After METCALF returned into the store, she talked and texted on her cell phone. While METCALF was still in the store, a salesperson walked through the parking lot and looked into the white Chevrolet SUV, and nodded his head in what appeared to be an acknowledgement of the black male in the front passenger seat of the vehicle. Approximately fifteen minutes later, METCALF left the store without purchasing a firearm or filling out an ATF Form 4473. METCALF returned to her Chevrolet SUV and drove off with the black male still in her vehicle. The white BMW remained in the parking lot.

9.      Approximately two hours later, the same White Chevrolet SUV returned to the Sharpshooters parking lot and parked. The same black male in the FedEx uniform exited the Chevrolet SUV and returned to the white BMW sedan carrying a white plastic bag that appeared to contain an item and then drove off. Your affiant notes that, approximately thirty minutes before

4

the Chevrolet SUV returned and dropped off the black male with the white plastic bag, METCALF had purchased a Glock 17, 9mm, semi-automatic pistol, bearing serial number ("S/N") BGYL233 from the FFL Quantico Tactical, which was located approximately twenty minutes from Sharpshooters, in Woodbridge, Virginia, within the Eastern District of Virginia.

10.     Sharpshooters also provided ATF with the surveillance video footage from a firearms purchase by METCALF at the FFL, on July 30, 2018. Your affiant reviewed the surveillance video and confirmed that METCALF was the individual depicted in the attempted transaction.

11.     Further investigation revealed that, METCALF purchased three (3) firearms from Quantico Tactical, within an eight (8) day period in August 2018. In total, METCALF spent over $1,400 to purchase firearms, magazines and ammunition from Quantico Tactical. ATF investigation determined that METCALF was a FedEx employee until the spring of 2018, and that Golden Triangle hired METCALF in July 2018 as a part-time employee. As a cleaning ambassador at Golden Triangle, METCALF made approximately $13.25 per hour.

12.     On August 18, 2018, METCALF purchased a Smith & Wesson, model M&P 9 Shield 2.0, 9mm, semi-automatic pistol, from Quantico Tactical. The receipt showed METCALF paid $469.44 in cash for the firearm and a box Sig Sauer 9mm ammunition. The general manager advised that METCALF was on her cell phone speaking with someone during her time in the store. The salesperson who handled METCALF's purchase stated that, after METCALF was advised of the higher listed civilian price on the Smith & Wesson pistol, METCALF stated that she needed to get more cash and left the store for approximately twenty minutes. METCALF then returned to the store to complete the paperwork for the firearm.

b.   Recovery of Firearms Purchased by METCALF

13.   Approximately eleven (11) days after METCALF purchased a Glock 42, .380 caliber, semi-automatic pistol, bearing S/N ACPV873, from Quantico Tactical, officers of the Metropolitan Police Department in Washington, D.C. ("MPD") recovered the firearm from behind an apartment complex on Chesapeake Street SE, in Washington, D.C. The firearm was recovered from the flight path of a foot pursuit of THOMAS who, at the time, was consuming marijuana in a public space. During a search incident to arrest, MPD recovered a clear firearm magazine with ammunition in THOMAS's pocket. THOMAS waived his *Miranda* rights and consented to a post-arrest interview with an MPD Detective. THOMAS stated that he received the firearm from METCALF and an acquaintance known only to THOMAS as "Lawrence." ATF agents later determined that THOMAS was referring to CHAMBERS, METCALF's boyfriend. CHAMBERS has a D.C. driver's license with a listed address on Longfellow Street NW, in Washington, D.C.

14.   In addition, approximately three months after METCALF purchased a Ruger, model LCP, .380 caliber, semi-automatic pistol bearing S/N 371820475 from DEGS Guns and Ammo at the Fredericksburg Gun Show, in Fredericksburg, Virginia, within the Eastern District of Virginia, the firearm was recovered by the Alexandria Police Department from a convicted felon.

15.   Based on my training and experience, the recovery of firearms purchased by METCALF from other individuals, including one outside the state of Virginia, in such a short time is indicative of an individual who is involved in firearms trafficking.

c.   ATF Surveillance of METCALF and CHAMBERS

16.   On September 6, 2018, ATF agents received information about a suspected straw purchase by METCALF, on August 22, 2018, from SpecDive Tactical, an FFL located in

Alexandria, Virginia, within the Eastern District of Virginia. During this purchase, METCALF special ordered a firearm from SpecDive and her behavior during the interaction led the storeowner to believe that she was straw purchasing a firearm. METCALF ordered a Century Arms Draco, NAK-9, 9mm, semi-automatic pistol bearing S/N RONVMB71814152. METCALF provided an address on Antrim Circle in Dumfries, Virginia. METCALF paid $761.16 in cash for the firearm at the time she placed the order. Prior to coming into the store, METCALF called SpecDive to inquire about the availability of the firearm. While METCALF was on the phone with the store, the owner could overhear a male's voice in the background talking to METCALF about the firearm. Once in the store, METCALF was on the phone, and she was overheard saying, "I am ordering it right now." METCALF was informed that she would be contacted once the firearm had been delivered to the store.

17.     On September 11, 2018, METCALF returned to SpecDive Tactical, and filled out the ATF Form 4473 for the purchase of the special ordered Century Arms Draco firearm, but the background check was delayed and SpecDive informed her to retrieve the firearm from them the following day.

18.     On September 12, 2018, ATF agents conducted surveillance at SpecDive and observed METCALF walk into SpecDive Tactical by herself to pick up the firearm. Approximately ten minutes later, a white BMW 750i with Maryland license plate 7CY6593 was observed idling in the parking lot of the building adjacent to SpecDive Tactical. The vehicle appeared identical to the white BMW depicted on Sharpshooters surveillance footage from August 10, 2018. Further investigation revealed that the white BMW is registered to CHAMBERS' mother. SpecDive's surveillance footage showed METCALF enter SpecDive Tactical and talk on her cell phone while she was in the store. METCALF signed the ATF Form 4473 and left the store

in possession of the firearm. She returned to the white Chevrolet Tahoe that appeared identical to the Chevrolet vehicle depicted on Sharpshooters surveillance footage from August 10, 2018. METCALF drove out of the parking lot, and the white BMW 750i drove out of the parking lot of the adjacent building and followed METCALF's white Chevrolet Tahoe.

19.     The white Chevrolet Tahoe and the white BMW 750i drove south into the parking lot of a condominium complex located in Alexandria, Virginia, and parked. CHAMBERS exited the white BMW 750i and entered the passenger seat of METCALF's Chevrolet Tahoe. After approximately five minutes, CHAMBERS exited METCALF's Chevrolet Tahoe and walked back to his own vehicle. METCALF and CHAMBERS then drove off from the parking lot separately.

  d. Interview of METCALF

20.     On September 12, 2018, approximately thirty minutes after leaving SpecDive with the firearm, METCALF consented to a voluntary interview with ATF and MPD. During the interview, METCALF stated that she was approached by "Manny," an individual known to agents to be THOMAS, to purchase firearms for THOMAS and CHAMBERS. METCALF stated that she agreed to purchase the firearms for THOMAS and CHAMBERS. METCALF stated CHAMBERS is her boyfriend and that she met CHAMBERS when she worked at FedEx. METCALF acknowledged that she had met with CHAMBERS earlier that day. METCALF admitted that she purchased four firearms for CHAMBERS and THOMAS. METCALF stated that she purchased two of the firearms for CHAMBERS and purchased two of the firearms for THOMAS. METCALF stated that CHAMBERS had previously told her about THOMAS being arrested in Washington, D.C. with one of the firearms she purchased for THOMAS. METCALF stated that CHAMBERS still had the two firearms she purchased for him, and that CHAMBERS lives with his mother in Maryland.

21.   METCALF explained how the firearms purchases occurred. For the two purchases for CHAMBERS, he provided METCALF with just enough cash to purchase the firearm on the day of each purchase. CHAMBERS would instruct METCALF on which firearm to purchase and meet METCALF in Virginia to take possession of the firearm. For the first firearm purchase for THOMAS, THOMAS provided METCALF enough cash for the cost of the firearm plus an additional $250 in profit. For the second firearm METCALF purchased for THOMAS, he gave her enough cash to purchase the firearm, and he told METCALF that he would pay her extra later for that firearm. For two of the firearms purchases, METCALF stated that CHAMBERS and THOMAS accompanied her to the FFL. METCALF was shown a photograph of THOMAS, who she identified as "Manuel".

22.   Following the interview, METCALF consented to a search of her vehicle, a white Chevrolet Tahoe previously identified by agents, as well as her cellphone and residence. Inside the vehicle, ATF found the purchased firearm hidden in a TV box and a rose-gold Apple iPhone.

e.   Interview of Chambers

23.   On September 12, 2018, approximately forty-five minutes after following METCALF's vehicle from SpecDive, the Montgomery County Police Department (MCPD) stopped and arrested CHAMBERS for driving on a suspended license. At the time, CHAMBERS was in possession of a Washington, D.C. driver's license, listing his address as being on Longfellow Street in Washington, D.C., and the BMW he was driving in was registered to his mother in Silver Spring, Maryland.

24.   Following his arrest, CHAMBERS waived his *Miranda* rights and agreed to speak with an ATF agent and MPD Detective. During his interview, CHAMBERS stated that he has known METCALF since he started working at FedEx in the spring of 2016. CHAMBERS stated

9

that METCALF quit FedEx in or around July 2018, but he confirmed that he still works at FedEx. CHAMBERS stated that METCALF usually drives a white Chevrolet Tahoe. CHAMBERS stated that he and METCALF talk on the phone occasionally.

25.    CHAMBERS stated that he currently lives with his sister in Washington, D.C. at the address on Longfellow Street, NW and had been living there for the last eight months. CHAMBERS stated that he stayed at his mother's house, in Silver Spring, Maryland, on September 11, 2018 and confirmed that, prior to moving in with his sister, he had lived with his mother in Silver Spring, Maryland since approximately 2000. CHAMBERS further stated that he drives a white BMW 750i that is owned by his mother, and his mother is the only other person that drives the vehicle.

26.    CHAMBERS claimed that he met up with METCALF on September 12, 2018, because she called earlier that morning and asked for money for lunch and parking. CHAMBERS stated that METCALF texted him to meet her at 5710 General Washington Drive, which is the address of SpecDive Tactical. CHAMBERS stated that METCALF arrived before him in the white Chevrolet Tahoe, and said that she needed to go get something. CHAMBERS stated that METCALF then called him and told him to follow her, and they both drove to a nearby apartment complex. CHAMBERS stated that he got in METCALF's car and gave her $30 and then he left.

27.    An ATF agent showed CHAMBERS screen shots from the surveillance footage at Sharpshooters on August 10, 2018. After viewing the screen shots, CHAMBERS claimed that he was on his way to work and met METCALF in the parking lot to get marijuana from her. CHAMBERS stated that METCALF went into the store to attempt to purchase a firearm, then came out of the store and they went to another firearms store together, where METCALF purchased a firearm. CHAMBERS said they then returned together. CHAMBERS claimed that

when he exited METCALF's car he was carrying a bag of clothes that METCALF had purchased for him.

28.     CHAMBERS further stated that he introduced METCALF to "Manny", known by law enforcement to be THOMAS, and that "Manny" lives at the Chesapeake Apartments in Washington, D.C. CHAMBERS positively identified THOMAS "as Manny" in a photograph.

f.     Interview of CHAMBERS' Mother

29.     On September 12, 2018, an ATF SA and MPD Detective interviewed CHAMBERS' mother ("CM") at her residence, located on Beaverwood Lane in Silver Spring, Maryland. CM stated that she has been living in her current residence for approximately 16 years. CM stated that she had last seen CHAMBERS that morning since she believed he had spent the prior night at her residence. CM stated that CHAMBERS occasionally stayed at her residence.

30.     CM provided law enforcement written consent to search CHAMBERS' room in her residence. There an ATF agent observed and took photographs of a FedEx uniform shirt in CHAMBERS' room that matched the one worn by the black male seen on Sharpshooters surveillance footage exiting the white BMW, on August 10, 2018, and worn by CHAMBERS while inside Sharpshooters, on July 30, 2018.

31.     On September 14, 2018, CM confirmed that the only two people who have access to the white BMW 750i are herself and CHAMBERS.

e.     Preliminary Analysis of METCALF's Cellphone and Review of Surveillance Video Footage from Sharpshooters

32.     METCALF consented to a search of the rose-gold iPhone recovered from her vehicle by ATF and provided agents with the passcode to unlock the phone. METCALF's phone listed one of her contacts – phone number 202-714-9848 – as "Los Baby." METCALF previously

11

told agents that she referred to CHAMBERS as "Los". The "Los Baby" contact also had a photo associated with it that agents positively identified as CHAMBERS. Additionally, the 202-714-9848 number is associated with CHAMBERS in law enforcement databases.

33.     Security video footage from Sharpshooters, on July 30, 2018, the same day METCALF purchased a Smith & Wesson 9mm semi-automatic pistol, showed that METCALF entered Sharpshooters at approximately 4:20 p.m.[1] with her cell phone in her left hand and shortly thereafter spoke with a salesperson. At approximately 4:23 p.m., a man visually identified from the footage by your affiant as CHAMBERS, entered the store dressed in a FedEx uniform and looked at several display cases. At approximately 4:25 p.m., while looking at the display case in the corner closest to the register, CHAMBERS pulled his cell phone from his right pocket and began typing. Agents identified the cell phone CHAMBERS is using in the video as the same cell phone that was seized from CHAMBERS incident to his arrest on September 12, 2018. CHAMBERS then resumed looking at the firearms in the display cases. At approximately 4:27 p.m., CHAMBERS was speaking with someone on his cell phone. At approximately 4:28 p.m., CHAMBERS looked at an extended firearm magazine. At approximately 4:29 p.m., CHAMBERS began speaking with someone on his cellphone and then walked out of the store. At approximately 4:34 p.m., a man visually identified from the footage by your affiant as THOMAS, entered the store and began looking at firearm display cases. At approximately 4:35 p.m., METCALF began looking at and typing on her cell phone, while THOMAS was standing over a firearm display case that was in the corner closest to the register; the same case that CHAMBERS spent several minutes

---

[1] The time listed on the security video is only approximate and is based on the in-house surveillance system at Sharpshooters. However, the time of the text messages is accurate to the minute and second, as these times are based on UTC as set by the cell-phone provider.

looking at earlier while on his own cell phone.  At approximately 4:36 p.m., METCALF quickly glanced to her left at THOMAS while THOMAS was looking at the display case and then THOMAS left the store.

34.    Forensic analysis of METCALF's cellular device revealed a text message conversation between METCALF and CHAMBERS that began at 4:29 p.m., on July 30, 2018, the same day that the aforementioned firearm was purchased.  METCALF sent the text messages to CHAMBERS while she was in Sharpshooters.  Based on the video surveillance footage, an interview with METCALF, and analysis of the relevant text messages, there is probable cause to believe that the pronoun "he" in the below text conversation is a reference to THOMAS.  The following text conversation occurred at approximately the same time that METCALF, CHAMBERS, and THOMAS were in Sharpshooters on the day METCALF purchased the aforementioned firearm:

| Direction | Time | Party | Description |
|---|---|---|---|
| Outgoing | 7/30/2018 4:29:10 PM(UTC-4) | From: +12028830483 | They need to know which one because they have to run the serial of the one I'm getting |
| Incoming | 7/30/2018 4:29:33 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Ok he in there looking |
| Incoming | 7/30/2018 4:29:45 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Just act like u looking around or sumin |
| Incoming | 7/30/2018 4:30:56 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Smith and Wesson 40 9mm |
| Incoming | 7/30/2018 4:31:04 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Its $299 300 fr |
| Incoming | 7/30/2018 4:31:08 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ . | Look for dat |

| Incoming | 7/30/2018 4:31:29 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Its $299 |
| Incoming | 7/30/2018 4:31:33 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Tell him that |
| Outgoing | 7/30/2018 4:31:37 PM(UTC-4) | From: +12028830483 | Ok |
| Incoming | 7/30/2018 4:36:49 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | S&W shield 9mm |
| Incoming | 7/30/2018 4:36:51 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Did you see it |
| Outgoing | 7/30/2018 4:37:13 PM(UTC-4) | From: +12028830483 | In the end stand rt |
| Incoming | 7/30/2018 4:37:33 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Do it say the price $299? |
| Incoming | 7/30/2018 4:37:42 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Send a picture of it |
| Outgoing | 7/30/2018 4:37:51 PM(UTC-4) | From: +12028830483 | 399 |
| Incoming | 7/30/2018 4:38:04 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | No it say $299 |
| Incoming | 7/30/2018 4:38:14 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | He just seen it |
| Outgoing | 7/30/2018 4:38:24 PM(UTC-4) | From: +12028830483 | I don't see it |
| Incoming | 7/30/2018 4:38:35 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Its over the in the corner part |
| Incoming | 7/30/2018 4:39:12 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Tell dem ask for it |
| Incoming | 7/30/2018 4:39:26 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | S&W shield 9mm |

| Incoming | 7/30/2018 4:39:29 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Tell them that |
| Incoming | 7/30/2018 4:39:32 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Its $299 |

35.    Further review of the security video from July 30, 2018 at Sharpshooters, showed that, at approximately 4:41 p.m., a salesperson showed METCALF what appears to be a Glock firearm.   METCALF then looked at and typed on her cell phone several times between approximately 4:43 p.m. and 4:45 p.m. while looking at the same display cases viewed by both CHAMBERS and THOMAS.  At approximately 4:46 p.m., METCALF walked back towards the corner of the store where the restrooms are located.  The text conversation continued:

| Party | Description | Party | Description |
|-------|-------------|-------|-------------|
| Outgoing | 7/30/2018 4:40:19 PM(UTC-4) | From: +12028830483 | I don't see it |
| Incoming | 7/30/2018 4:40:46 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | He bouta come in dere |
| Incoming | 7/30/2018 4:40:59 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | How u cant see it young |
| Incoming | 7/30/2018 4:41:17 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Just look at where he goes |
| Incoming | 7/30/2018 4:46:24 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Got it ? |
| Outgoing | 7/30/2018 4:48:49 PM(UTC-4) | From: +12028830483 | Yes |

36.    At approximately 4:48 p.m., THOMAS walked back into the store and looked at the same display case that he observed earlier, which is located in the corner closest to the register.  At approximately 4:49 p.m., METCALF walked around the corner from where the

15

restrooms are located and glanced in the direction of THOMAS and the display case closest to

him. She then stood a few feet behind THOMAS and looked at the same display case for a few

seconds before she walked away. THOMAS then appeared to ask a salesperson where the

restroom was located and a salesperson directed him towards the same corner that METCALF

had just left. While THOMAS was in the restroom area, METCALF walked over to the same

display case that THOMAS previously viewed and looked inside the display case. At

approximately 4:50 p.m., METCALF pointed to a firearm in that display case while speaking

with a salesperson. At the same time, THOMAS walked back from the restroom area and paused

at several different display cases, while METCALF spoke with the salesperson. At

approximately 4:50 p.m., a salesperson retrieved a Smith & Wesson pistol from the display case

METCALF had watched THOMAS view in the corner closest to the register and set it down on

the top of the glass. METCALF picked up the Smith & Wesson firearm for only a few seconds

but did not appear to manipulate it. At approximately 4:52 p.m., a salesperson placed the Smith

& Wesson pistol into a cardboard Smith & Wesson box. At approximately 4:53 p.m.,

METCALF glanced at THOMAS several times while he looked inside a different display case.

At approximately 4:54 p.m., THOMAS left the store. Between approximately 4:55 and 4:59

p.m., METCALF looked at and typed on her cell phone several times. The text conversation

continued:

| Direction | Time | Party | Description |
|---|---|---|---|
| Incoming | 7/30/2018 4:49:39 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Get sum tacos for it 2 |
| Outgoing | 7/30/2018 4:50:22 PM(UTC-4) | From: +12028830483 | They cost like 40 |
| Incoming | 7/30/2018 4:50:32 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Ok |

| Incoming | 7/30/2018 4:50:34 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | Get it |
|---|---|---|---|
| Outgoing | 7/30/2018 4:50:38 PM(UTC-4) | From: +12028830483 | Ok |
| Outgoing | 7/30/2018 4:53:28 PM(UTC-4) | From: +12028830483 | I'll be there shortly |
| Incoming | 7/30/2018 4:56:34 PM(UTC-4) | From: +12027149848 Los Baby 😊❤ | How its going ? |

37.     At approximately 4:59 p.m., METCALF paid cash for the firearm.     At approximately 5:00 p.m., a salesperson placed the cardboard box containing the firearm into a white plastic bag with a Sharpshooters logo. At approximately 5:01 p.m., a salesperson placed a box of ammunition in the white plastic bag. METCALF purchased the ammunition in a separate transaction from the firearm and paid in cash for the ammunition. Based on my training and experience, I know that individuals engaging in illicit activities sometimes use code words to disguise their criminal conduct. In this case, "tacos" appears to be a term for bullets or ammunition because communications regarding "tacos" correspond with this and previous purchases of ammunition. METCALF left the store carrying the white plastic bag with the firearm and ammunition inside at approximately 5:02 PM.

38.     Based on my training and experience, I know that the firearms discussed in this affidavit constitute firearms, pursuant to Title 18, United States Code, Section 921(a)(3), were not manufactured in the State of Virginia and, therefore, the firearms traveled in, and/or affected interstate commerce.

## CONCLUSION

Based on the foregoing facts, I submit that there is probable cause to believe CHAMBERS, METCALF and THOMAS made false statements in relation to the purchase of a firearm, on or about July 30, 2018, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2.

Respectfully submitted,

Tyler Mensing
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me
This ___ day of July, 2019.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge
The Honorable John F. Anderson
United States Magistrate Judge